We want to welcome everyone to the 4th Circuit Court of Appeals this morning. Judge Floyd and I are particularly honored to be sitting on the panel with Judge Rushing. Our first case, Hulsey v. Cisa, No. 18-2014, Mr. Miles. Yes, sir. Good to have you here, sir. Good to be here. May it please the Court, my name is Russell Miles and I'm here representing Mr. Paul Hulsey and his law firm. I'm joined by Ms. Cherie Duran and Mr. Frazier-Reed. As the Court knows, we are here because the trial court dismissed our case. It based its decision on Rooker-Feldman. I plan to use my time with you this morning addressing the Rooker-Feldman doctrine and the judges' or the trial court's decision. Mr. Reed, if it will please the Court, will handle our rebuttal. The trial court's analysis of Rooker-Feldman, Your Honors, and its application to this case was wrong, and here is why. The U.S. Supreme Court in Exxon v. Saudi Basic Industries, a 2005 decision, and then in 2006 in Lance v. Dennis, reminded us that the scope of application of the Rooker-Feldman doctrine is indeed very narrow. The Court reminded us that application of that doctrine is confined to cases of the kind from which the doctrine acquired its name. Cases like Rooker, cases like Feldman, where a litigant loses in a state court matter and then proceeds to a federal district court, files an action there challenging the state court decision, taking, in essence, an appeal to that court, asking the federal district court to review and then reverse the state court judgment, seeking redress for an injury allegedly caused by the state court decision. What's a state court decision here? What state court decision are you talking about here? Well, Your Honor, that is a question that takes us to the crux of this appeal. I thought you were going to say it was the Supreme Court decision. Well, the Supreme Court decision. Of South Carolina. Of South Carolina. I thought that's what you would say. That's what I would say. Okay. That's what I'm getting at. And there is nothing that could be appealed from what occurred in the state court. Did you lose in the state court? We did not, Your Honor. Well, you've taken steps. The South Carolina Supreme Court decided that's the decision, and you weren't the loser. We were not. And you're saying that you have to be the loser for Rooker-Feldman to be triggered. Your Honor, that is precisely what the U.S. Supreme Court told us in Exxon and in Lance. You ask two questions to determine whether the Rooker-Feldman doctrine should apply. First, Judge King, is does the plaintiff come to you as a loser in state court proceedings? If not, Rooker-Feldman does not apply. And the point would be that the district court in South Carolina is not an appellate court for review of a South Carolina Supreme Court decision. Pursuant to 28 U.S.C. 1257. Correct. And that is the whole point of the Rooker-Feldman doctrine. If, though, your plaintiff comes to you as a loser in a state court proceeding, the next question is this. Is that plaintiff challenging a state court decision? Is he asking the federal court to review and revert? Isn't it even more than that? It's that injury was caused by the state court decision, right? You could be, there's wiggle room when it comes to challenging. And that's what I think the district court was getting at here, right? That maybe you're challenging one aspect of what happened in the state court. But I think the question is, are you complaining of an injury caused by the state court decision? Who caused the injury your client's complaining of? That is correct, Your Honor. I believe the courts do speak of challenging directly the judicial decision of the state court. But you are precisely correct. What the plaintiff in a typical or a classic Rooker-Feldman case would be doing is seeking redress for an injury he or she alleges was caused by the state court decision. And that is the second question that Lance and Exxon tells us that we have to ask to determine whether Rooker-Feldman applies. But Judge Duffy here relied on that inextricably intertwined language, didn't he? He did. How do you get around that? Well, this circuit addressed the inextricably intertwined language in the Devaney case. I think that was Devaney v. Virginia Department of Transportation, a 2006 case. There, the inextricably intertwined language is found in, I think, footnote 16 of the 1983 Feldman case. Devaney tells us that inextricably intertwined is not a separate, independent test to determine if Rooker-Feldman should apply in a particular case. It is nothing more than a description of a set of circumstances. I think the circuit, the court there in Devaney used the word conclusion, a conclusion of a set of circumstances where Rooker-Feldman should apply. Again, to recap that issue, where a litigant who has lost in state court comes to federal court and seeks to have that court review and reverse a state court judgment. With that backdrop, so the inextricably intertwined concept of that language, again, does not create an independent, separate test to apply Rooker-Feldman. If we agree with you on the Rooker-Feldman argument, is it necessary or should we address the other issues raised on appeal? Your Honor, from my view of things, that is the only issue that is addressed on the appeal. That is the only issue that was relied on, the only legal principle that the federal district judge relied on to dismiss our case. The general rule, your honors all know, is that we don't take up on appeal issues that were not decided below. And that would be our position. If I may, given that backdrop, does, should Rooker-Feldman. So all those other issues would be left for the district court, in your view. You want to vacate this ruling that you have on Rooker-Feldman and remand for whatever else there is. That is precisely my request, your honor. We are prepared to go back to the federal district court and begin the trial of our case. Mr. Polsey, as I mentioned, as your Judge King asked a moment ago, was not a loser in a state court proceeding. Those default judgments, there were two trials to determine damages. The Supreme Court of South Carolina reversed those judgments. The Supreme Court of South Carolina said there was no default. There should have been no entry of default. And the Supreme Court of South Carolina remanded the cases to the trial court. Sent the parties back to the trial court to start anew. What happened then, we know there was discovery. There was a trial on the merits. And we had an entirely different result as we mentioned just a moment ago. The end of that trial in Mr. Limehouse Sr.'s case, the jury found against Mr. Limehouse Sr. and found in favor of Mr. Polsey and his law firm. He was a winner in that case. So Mr. Polsey, your honors, did not go to that federal district court in South Carolina as a loser. Moreover, and more importantly, he did not go to that federal district court challenging in any way any state court decision. Contrary to Judge Duffy's analysis, Judge Rushing, there is no claim in our complaint that seeks redress of an injury allegedly caused by a state court decision. Again, at the end of the proceedings in South Carolina, Mr. Polsey was the winner. There is no claim, contrary to Judge Duffy's analysis, that asks a federal court to review or reverse any state court decision. And there is, contrary again to Judge Duffy's analysis, no claim or count in our complaint. It is based on an allegation that Mr. Polsey was entitled to discovery in those default judgment proceedings. Again, your honors, proceedings that were completely vacated, entirely set aside, overturned by the South Carolina Supreme Court. We addressed the inextricably intertwined doctrine. That is essentially the entire response of the defendants in this case. They did not address Devani. They did not seek to distinguish Devani in any way. In fact, I'm not sure that they even cited the Devani case. But inextricably intertwined, again, does not create a separate independent test to determine if the Rooker-Feldman doctrine should apply. At the bottom of this issue, Mr. Polsey came out of the court system in South Carolina as the winner. He does not ask a federal court to do anything, to take any action at all with regard to anything that occurred by that state court system in South Carolina. Rooker-Feldman should not apply here. Thank you. Thank you, sir.  Thank you, your honor. May it please the court, Marcus Mantis along with Nexon Pruitt for Pinnacle Bank, successor to South Coast Community, and its employee, Robert Daniel, on behalf of all appellees for purposes of this argument only. What the court just heard, what it read in the briefs, what it sees in the joint appendix, is settler's remorse. In the actions of state court, two parallel defamation cases, Mr. Polsey failed to defend and was held in default. That was appealed to the Supreme Court. After a jury trial, exonerating him in one case, he determined he would settle the case on behalf of himself and his law firm. Paid a half million dollars. And eventually, roughly a year later, became unhappy with what had happened, crossed the four corners of law, went to the United States District Court and said, let's undo the settlement and let's undo the ruling of the South Carolina Supreme Court that said I had no right to discovery, no right to know the one key piece of evidence. The entire U.S. District Court case is based upon, allegedly under the Racketeering Influence and Corrupt Organizations Act, which was a tax levy, supposedly executed and filed in April of 2004. Supreme Court of South Carolina said he had no right to discover that tax levy during the default proceedings. The RICO claim filed in the U.S. District Court says that if Mr. Polsey and his law firm had known about the tax levy, they could have saved themselves all the expenses of litigation, half a million dollars in settlement, been exonerated, and that it was a RICO conspiracy to cover up this evidence. Even though the Supreme Court of South Carolina just said you had no right to discover that evidence during that time. The District Court correctly found that triggered the Rooker-Feldman Doctrine. The finding of the Supreme Court on the ruling on default that Mr. Polsey was not entitled to discover that particular piece of evidence is the linchpin of his federal district court case. But more than that, once he had discovered the tax levy, had it in hand, as the joint appendix shows on pages 37 and 38, knew about it, tried a case, presented his evidence, won the case, he determined to settle the underlying state court cases. Does that settlement make him a state court loser? Your Honor, it does to this extent. Once a litigant has decided to settle the cases where the issues were actually brought up with the full evidence in front of them, and they're bound by a court order dismissing with prejudice, which is a final order of the South Carolina Tribal Court based upon the settlement, they come into federal court now saying, I want to undo that judgment. I'm not happy with what I agreed to do. I agreed to do it, but the court entered the order. The court dismissed it with prejudice. And let's look at what the claim is, Your Honor. The claim is something that Mr. Polsey could have brought in that very state court action. Isn't that a preclusion argument? Your Honor, it does slip into preclusion. As this court said in Thyme, you know, very often Rooker-Feldman is paired with other preclusion issues. Issue preclusion and race due to color. Well, it looks to me like you're complaining, Rooker-Feldman and race due to color. Is that what you're doing here? No, Your Honor, I don't believe so because of the ruling of the South Carolina Supreme Court in the interim. And the whole thing that supposedly is the linchpin of the RICO claim is that one piece of evidence. And the Supreme Court said you can't get discovery of that at that stage. We send you back down, you get discovery, you get the evidence. But again, that's, Judge Floyd is pointing out, that sounds like a preclusion argument. The Supreme Court has, what they've told us Rooker-Feldman has to do with is that we don't review judgments from state courts. But they've been very particular to limit it to basically us sitting in the position of the U.S. Supreme Court. The only federal court that can review those state court judgments. And when you're talking about a particular holding, one issue in a case where he was the winner, that sounds like preclusion and not like we're in danger of usurping the Supreme Court's position over the South Carolina state courts. Your Honor, I think it's actually both. It certainly is issue preclusion. The issue was litigated and decided. But the case is also about when did Mr. Holsey and his law firm have a right to have this evidence. When did they know? Because the actual damages they're seeking here, if you look, there's a very broad allegation, as required by RICO, that Mr. Holsey and his law firm are injured in their business and property. The only damages articulated anywhere were the cost of defense in the cases and the settlement. Those come about, and now Mr. Holsey is saying, the decision of the South Carolina Supreme Court that I didn't have a right to see that document, that I didn't have a right to do a discovery, and subpoenaed, triggered all those damages. He's saying he's injured because he blames someone for supposedly hiding evidence or what have you. The injury, as I understand it from the complaint, is that the other party caused this injury by keeping this evidence from me, whether or not he had a right to it. Not that the injury is caused by a court's decision. Am I misunderstanding that? Your Honor, I believe, one, Mr. Holsey alleges that, yes. He alleges that witnesses knew about this and didn't testify to it, although there's no question put to them saying, did you know about a tax level, if you look at the record. The real complaint is somebody should have given me a copy of the tax levy. We have no power to compel anybody to give me a copy of the tax levy. Are those tax levies of record down there in some office in South Carolina? Your Honor, they should be, under normal IRS protocol. What was this one? Is it a matter of public record? What county is this? It's Charleston County, Your Honor. Is it of record? A levy, unlike a lien, is not necessarily filed. A lien often comes before a levy and is filed. Is this a lien or a levy? This is an actual levy. It's called a lien in some of these papers. Yes, sir. The actual document that's attached is a notice of levy. All right. If you look at the record. But you don't know whether it's a record. I do not know if the levy itself was ever filed. The county office is down there or not. Are you alleging or claiming that there's some alternative ground for us to affirm, rather than if we don't buy into the Rooker-Feldman stuff? Yes, Your Honor. Under Catawba tribes. Under what? Under Catawba tribes, this court can look at anything that's clear on the record. Right. That would have reached the same conclusion. If there's ground for affirmance. Right. We could do it, right? Yes, sir. How many of those grounds have you got? I've got three. You've got three. So are you going to give up the Rooker-Feldman and argue those three? I am going to go to that in just one moment, Your Honor. There's one other case I'd like to point out that's not cited in our brief. 526 Federal Appendix 231, 2013 Westlaw 1613219. That's Smalley versus Shapiro and Burson. A similar RICO case brought by a plaintiff seeking damages, allegedly suffered as a result of mortgage foreclosures that happened due to falsified affidavits. What court is that in?  I don't want to do it on the pen. Judge Kaiser, senior district judge sitting by designation Roe, wrote the opinion. And the court found, using the inextricably intertwined language, which is not a separate test but is a part of Feldman, as is Quote Note 16, which says the Rooker-Feldman doctrine includes things that could have been litigated but the litigant chose not to in the case. And here, the court found that seeking as damages legal fees, losses of property value, and the rest of it, while not directly trying to set aside foreclosure, is the Rooker-Feldman doctrine. And that's what Mr. Halsey and his law firm are doing here, which is why the ruling of the district court should be affirmed. But turning from that ground, Your Honor, as this court said in Thana, you often go back and look and see that you have traditional issues of preclusion as well. On remand from the Fourth Circuit in Thana, the District of Maryland dismissed the case on traditional preclusion issues. How so? Well, in this case, it would be the same way. If you look at issue preclusion, the issue of whether there was access or a right to access this tax levy and use it was ruled on most Supreme Courts out there, and I said no. When it was sent back down to the trial court and access was given, Mr. Halsey and his law firm had complete notice of everything they needed to do any number of things. Seek a noted entry ruling from the court that this gets rid of everything. This shows they were concealing things. Seek sanctions. Bring a reconed counterclaim in the concurrent jurisdiction of the state court, which is recognized by this court. As this court has said in one of its cases, the Supreme Court has said state courts are often a great place for RICO because a lot of the predicate acts are based on state law, but they understand. That's Johnson v. Collins Entertainment at 199 F. 3rd, 710, where the court said that. In that particular case, the court vacated the district court injunction, remanded with instructions to stay the federal action, the concurrent federal action, and let the state court RICO proceeding proceed. It was a compulsory counterclaim. We looked at state law when we tried to make that decision. There was no party outside the jurisdiction of the court that needed to be joined. It arose from the same nexus of fact. Indeed, it arose from the actual cases that were being tried and then sent in state court. The failure to bring it there and to voluntarily settle the case bars Mr. Halsey and his law firm from going forward with a new federal case. The Limehouses, who were the plaintiffs, were the proxies of all the other parties. This is alleged RICO conspiracy. Supposedly, they were all acting together in concert, and Mr. Halsey and his law firm were aware of that, at least by a couple of months before the trial, according to their own allegations, of Limehouse Senior's defamation case. In that light, certainly they could have brought the RICO counterclaim, should have brought the RICO counterclaim, but didn't. Now that they have it, they walk across the street and want to undo that decision and that's up. A very similar case decided in the District of South Dakota in Walter v. North American Truck and Trailer 277 FRB 401. And essentially the court there said, we looked at the state rules on whether this was compulsory counterclaim. You can bring RICO in state court. You could. You didn't. You don't get a second bite at the apple. You don't get to settle that case and then come out and raise a claim out of the same operative facts. And to point out, Your Honor, South Carolina's Rule 13a is identical to the federal Rule 13a. So federal cases deciding compulsory counterclaim issues are considered by the South Carolina Courts under May Bankers subvention T. There are other differences between the Devaney case and the Thaddeke case in this one as far as worker-fellowment and issue preclusion go. This is not a concurrent case brought in federal court. This case was brought after the conclusion of the state court litigation. Do you agree that the state court litigation is the decision of the South Carolina Supreme Court? Your Honor, we believe it's two things. The decision of the Supreme Court of South Carolina, yes, on the discovery issue, but also the final order dismissing the claims of prejudice by the trial court after Mr. Holsey and his law firm decided to sue. And that's in the court there in Charleston County? Yes, sir. I want to be clear about, are you characterizing the South Carolina Supreme Court judgment as an injury? Your Honor, I believe the complaint brought in federal court by Mr. Holsey and his law firm actually characterizes it as an injury. Because when you read the complaint through, Mr. Holsey's claim is, if I had that tax levy, if I had it earlier, I could have derailed what he speculatively calls the defamation cases as objectively baseless. And I wouldn't have all these damages. But the Supreme Court decision essentially allowed him to start his case as new, didn't it? It did, Your Honor. At which point he discovered the tax levy. They go hand in hand. He didn't have it earlier. And as part of, when Your Honor reads the record, you'll see it's frequently referred to as an objectively baseless set of defamation claims. But the defamation claims did exactly what the underlying RICO class action brought against the Limehouses by Mr. Holsey's client. Survived motions to dismiss, survived summary judgment, went to trial. It doesn't mean they'd be objectively baseless standards here. And this key piece of evidence we're arguing about isn't something that says what Mr. Holsey told the paper is true. Mr. Holsey didn't actually say it. It's nothing that does that. What it did was give an alternative causation for a set of damages. Create a jury issue on whether one of the businesses actually went out of business due to the effect of the defamation or due to the effect of the tax levy. Which is one of the reasons why, Your Honor, this really isn't a RICO case at all. This one piece of evidence was revealed in the case, known. It's that piece of evidence. It created a jury issue on damages. Even if everything that is said in the complaint about what the parties, the Attlees, did is true, it involves witness testimony. It involves responses to subpoenas. It revolved all in open court during litigation. This court has held consistent with the other circuits that have addressed it that testimony on the stand, even perjury, is not a RICO predicate act. Take that away and what predicate acts are there? Mail fraud by sending a letter requesting to collect on a judgment. That, the South Carolina court had ruled, was not stayed pending the appeal of the default. But the parties could proceed with collection. So now that suddenly is a predicate act of mail fraud. There are no predicate acts like it. That's kind of the third step, Your Honor, which you'd ask me what else is obvious in the record. There's no mail fraud. You're not talking about anything here now that has anything to do with Brooke or Felton? No, Your Honor. I've moved on to the other additional sustaining grounds, particularly on RICO. You've got three separate grounds. What we've got in this record, basically, is a complaint and a motion to dismiss and a dismissal order. Yes, sir. And the dismissal order only deals with Brooke or Felton? Yes, Your Honor. And you want us to, if we don't agree on the Brooke or Felton, to go to these other things? Yes, Your Honor. We've got lots of authority that we're more of a court of review than we are a first view. But these alternative grounds, we don't normally rule on. We let the district courts rule on them. We take that out if somebody feels it. Well, that's correct, Your Honor. So if you lose on the Brooke or Felton, why wouldn't we, if we follow the normal way we do things up here, why wouldn't we just remand it and let you all live eight further in the district court? Your Honor, I think that is... I mean, nobody's even filed an answer. Nobody's in discovery. Not much has been done in this case. I mean, in this case. I mean, you've got all this background stuff. But if you can't prevail on the Brooke or Felton, I'm just trying to figure out how, why we would take up these other grounds, which is mostly what your brief is. You only spend four or five pages talking about Brooke or Felton, and then you spend another 25 or 30 talking about everything else. That's correct, Your Honor. And those grounds were raised at the motion to dismiss. Yes, I understand they were raised. I don't dispute that at all. They were raised, but they were not addressed by the district court. So there's nothing for us to review in the context of a decision by the district court on these other grounds. That's correct, Your Honor. Except under Catawba Indian Tribe and Ostrowski, this court has said when it's obvious from the pleadings and what's in the joint appendix... We have a right to do it. You have a right to do it. I don't disagree with that. And here, I think the issue of preclusion and the race judicata effects, and the lack of pleading RICO to the very high standards required by this circuit, can be seen just by reviewing the complaint. This is not a RICO case. Perjury is not a predicate act. Activity in litigation, as has been held by the 1st, 7th, 10th, 11th, 9th circuits, is exempt from RICO. The handful of cases that have been cited in opposition to that, CSX case at the trial level, and I've forgotten the one from the criminal case from the 2nd Circuit, Your Honor. Boyle. There are activities outside the litigation that relate to core of the RICO claim. The vast majority of these claims are dismissed summarily because what's happening in court is not going to be the basis of a RICO claim. The courts are not willing to stymie litigation that is not objectively baseless by allowing RICO to go after it. Your Honor, if I can sum up. The other issue, and I do want to say it since it's a memorable argument, is statute of limitations. Well, you've got that red light on. Yes, sir. I'll give you another 30 seconds. Thank you, Your Honor. Worker Feldman should apply in this instance because of the Supreme Court's ruling and the voluntary settlement. If it doesn't, race you to God and issue a preclusion to block this suit, and it failed appropriately to plead RICO. Thank you very much, sir. Mr. Reed. Thank you. My name is Fraser Reed. May it please the court. Professor Blakey was going to be handling the rebuttal, but he got food poisoning, so I am going to take his place, and I will be doing my best. If you have, I have limited time, seven minutes, so if you have areas you'd like me to address, please do interrupt. Otherwise, I'll be going down the notes that I made based on Mr. Mann's argument. Mr. Mann has characterized this lawsuit as about settler's remorse, and we're at the 12B6 stage, and the allegations of the complaint must be accepted as true, and the inference is in our favor. The defendant's characterization is not what is alleged in the complaint. Mr. Mann has relied on the Supreme Court's order  Mr. Hulsey was not entitled to discovery while in default,  Mr. Hulsey's RICO claims do not hinge on an entitlement to discovery while he was in default. There's no allegation in the complaint that he was entitled to discovery while he was in default. So we're not challenging that ruling, and as we described in our reply brief, the Colton and Gillian decisions from the Fourth Circuit that there is no duty to disclose required to support allegations of mail fraud. So, we believe that the Supreme Court's decision is simply not relevant to our allegations. Mr. Mann has characterized the RICO claims in federal court as something that should have been brought as a compulsory counterclaim in state court, and they simply were not compulsory counterclaims. As the court knows, compulsory counterclaims have to exist at the time the pleadings are filed. Otherwise, they're permissive. And at the time of the complaint and the time of Mr. Hulsey's answer, Mr. Hulsey was not aware of the facts that gave rise to the RICO claim. So by the time he became aware of the existence of the claim, it could not have been brought in state court, and it certainly was not compulsory that it be brought in state court. I'll address preclusion briefly. For issue preclusion to apply the issue has to have been actually litigated. You're arguing these alternative grounds for dismissal that they're bringing up. That's right. This would be solely an alternative ground. But your position, your primary position on that is we shouldn't reach them. Absolutely, Your Honor. That's correct. I was just going to respond. Yes, Your Honor. That is our position. I was... To deal with. Does the tax lien have anything to do with the Rooker-Feldman Doctrine? Does the tax lien have anything to do with the Rooker-Feldman Doctrine? It's focused on the Rooker-Feldman Doctrine for a minute. Well, Your Honor, the tax lien is not a state court judgment. We didn't... I don't see how... unless I'm missing something, I don't see how that would be some sort of an injury by the state court that we would be complaining of for Rooker-Feldman purposes. It's an IRS lien? Yes, Your Honor. It's an IRS levy. I'm sorry. Does it have a record in Charleston County? Your Honor, I don't know for sure. Not that I know of, but I have not... I can't make a representation. Does getting a lien make it a matter of public record? I'm sorry? To secure a lien or something or to give notice to the public, don't you have to put it on a public record? This was not a lien. It was a levy. A levy. That's not filed anywhere. I can't swear to that, Your Honor. I just can't make a representation. If I ask you to swear, I'm just asking you to answer a question, Investigator. Well, I can't. I feel uncomfortable representing you. But if you don't know the answer, you don't know the answer. Correct, Your Honor. That's a good answer. Well, that's the one I'm going to have to stick with. Just briefly, Your Honor, claim preclusion requires a compulsory counterclaim which isn't present. It requires that the identities of the parties be the same and we have eight additional defendants in this federal action. So it doesn't apply for that reason as well. Also, the subject matter in the state court was not the same as in the federal litigation. What was at issue at the state court was whether Mr. Hulsey had defamed the Limehouses. What is at issue in this case, obviously, are RICO allegations against the Limehouses and others. Mr. Maddox also mentioned the dismissal with prejudice in the district court. Mr. Hulsey certainly did not lose based on a dismissal with prejudice. That's a resolution in his favor. He's happy with the dismissal with prejudice. He is not complaining of it and it did not injure him. Oh, sorry ... Nice pitcher... I've been told the levy is not on record in Charleston, but... That's fine, sir. Alright, thank you, Your Honors. I appreciate your patience. Thank you! I appreciate it Mr. Reid. Thank you.
judges: Robert B. King, Henry F. Floyd, Allison J. Rushing